**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MARYLAND**

| | |
|---|---|
| *In re:* | |
| Roman Catholic Archbishop of Baltimore, | Chapter 11 |
| Debtor. | Case No. 23-16969-MMH |
| | |
| Roman Catholic Archbishop of Baltimore, et al. | Adv. Pro. No. 24-072 |
| *Plaintiffs* | **MOVING INSURERS' MOTION TO DISMISS OR FOR A MORE DEFINITE STATEMENT; MEMORANDUM OF LAW IN SUPPORT THEREOF** |
| v. | |
| American Casualty Company of Reading, Pennsylvania, et al. | |
| *Defendants.* | |

James P. Ruggeri (Fed. Bar No. 21926)
**RUGGERI PARKS WEINBERG LLP**
1875 K Street NW, Suite 600
Washington, DC 20006
Telephone: 202-984-1400
jruggeri@ruggerilaw.com
jweinberg@ruggerilaw.com
arolain@ruggerilaw.com

-and-

Philip D. Anker (*pro hac* forthcoming)
**WILMER CUTLER PICKERING HALE AND DORR LLP**
7 World Trade Center
250 Greenwich Street
New York, NY 10007
Telephone: (212) 230-8890
philip.anker@wilmerhale.com

*Counsel to Hartford Accident and Indemnity Company, Hartford Casualty Insurance Company, Hartford Fire Insurance Company, and Twin City Fire Insurance Company*

David K. Roberts (D. Md. Bar No. 18776)
**O'MELVENY & MYERS LLP**
1625 Eye Street NW
Washington, DC 20006
droberts2@omm.com

-and-

Tancred Schiavoni (admitted *pro hoc vice*)
**O'MELVENY & MYERS LLP**
Times Square Tower
7 Times Square
New York, NY 10036
Telephone: 212-326-2000
tschiavoni@omm.com

*Counsel to Federal Insurance Company, Indemnity Insurance Company of North America, Insurance Company of North America, and Westchester Fire Insurance Company*

[Additional Counsel on Signature Page]

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ........................................................................................... 1

STATEMENT OF FACTS ................................................................................................... 4

APPLICABLE LEGAL STANDARDS ............................................................................... 7

ARGUMENT ..................................................................................................................... 11

    I.     The Claims Alleged in the Amended Complaint Are Not Ripe for
           Adjudication ................................................................................................... 11

    II.    Plaintiffs Fail to State a Claim for Declaratory Relief ................................. 13

    III.   Plaintiffs' Claims for Excess Coverage Fail Because They Do Not
           Plausibly Allege Exhaustion ........................................................................ 15

    IV.   In the Alternative, the Court Should Require Plaintiffs to Make a More
           Definite Statement of Their Complaint ........................................................ 16

CONCLUSION ................................................................................................................... 17

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Allstate Ins. Co. v. Preston*,
2019 WL 3067918 (D. Md. July 12, 2019) ........................................................... 12

*Balt. Scrap. Corp. v. Exec. Risk Specialty Ins. Co.*,
388 F. Supp. 3d 574 (D. Md. 2019) ...................................................................... 10

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .............................................................................................. 10

*Blanchette v. Conn. Gen. Ins. Corps.*,
419 U.S. 102 (1974) ................................................................................................ 8

*Bryant v. Cheney*,
924 F.2d 525 (4th Cir. 1991) ............................................................................... 8, 9

*Butler v. Wells Fargo Bank, N.A.*,
2013 WL 145886 (D. Md. Jan. 11, 2013) ............................................................. 14

*Charter Fed. Sav. Bank v. Off. of Thrift Supervision*,
976 F.2d 203 (4th Cir. 1992) ............................................................................ 9, 11

*Coffman v. Breeze Corps.*,
323 U.S. 316 (1945) ................................................................................................ 9

*Davis v. Thompson*,
367 F. Supp. 2d 792 (D. Md. 2005) ........................................................................ 9

*Deakins v. Monaghan*,
484 U.S. 193 (1988) ................................................................................................ 8

*Doe v. Church of Jesus Christ of Latter-Day Saints*,
No. JKB-23-02900 (D. Md. Apr. 5, 2024) ............................................................. 5

*Dyer v. Md. State Bd. of Ed.*,
187 F. Supp. 3d 599 (D. Md. 2016) ...................................................................... 14

*Evans v. Household Fin. Corp. III*,
2018 WL 1169180 (D. Md. Mar. 6, 2018) ............................................................ 14

*Fireman's Fund Ins. Co. v. Rairigh*,
59 Md. App. 305 (1984) ........................................................................................ 15

*Forest Labs., Inc. v. Arch Ins. Co.*,
953 N.Y.S.2d 460 (N.Y. Sup. Ct. 2012) ............................................................... 16

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

*Franks v. Ross,*
313 F.3d 184 (4th Cir. 2002) ........................................................................... 9

*Geist v. Hisp. Info. & Telecomms. Network, Inc.,*
2018 WL 1169084 (D. Md. Mar. 6, 2018) ....................................................... 13

*In re Barton-Cotton, Inc.,*
2012 WL 2803742 (Bankr. D. Md. July 10, 2012) ........................................... 8

*In re Davis,*
2020 WL 3485122 (Bankr. M.D.N.C. June 25, 2020) ...................................... 8

*In re Energy Futures Holdings,*
531 B.R. 499 (Bankr. D. Del. 2015) ................................................................. 9

*In re Erickson,*
2013 WL 2035875 (Bankr. E.D. Mich. May 10, 2013) ..................................... 8

*In re Hoffer,*
383 B.R. 78 (Bankr. S.D. Ohio 2008) ............................................................... 9

*In re Jaley,*
600 B.R. 511 (Bankr. D. Md. 2019) ............................................................. 9, 10

*In re Joe Gibson's Auto World, Inc.,*
2010 WL 5136154 (D.S.C. Aug. 3, 2010) ....................................................... 10

*In re Lynn-Weaver,*
462 B.R. 310 (Bankr. D. Mass. 2011) ............................................................... 8

*In re Moseley,*
161 B.R. 382 (Bankr. E.D. Tex. 1993) .............................................................. 8

*In re Roman Cath Archbishop of Balt.,*
No. 23-16969-MMH (Bankr. D. Md. argued Apr. 15, 2024) ........................... 13

*In re Roman Cath. Diocese of Syracuse,*
No. 21-50002 (Bankr. N.D.N.Y. Apr. 25, 2024) ............................................. 13

*In re Roman Catholic Bishop of Oakland,*
No. 4:23-bk-40523 (N.D. Cal. argued Nov. 14, 2023) ...................................... 3

*In re Satellite Rests. Inc. Crabcake Factory USA,*
626 B.R. 871 (Bankr. D. Md. 2021) .................................................................. 7

*Malibu Media, LLC v. Doe,*
2015 WL 857408 (D. Md. Feb. 26, 2015) ....................................................... 10

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Md. Cas. Co. v. Pac. Coal & Oil Co.*,
  312 U.S. 270 (1941) .................................................................................. 15

*MedImmune, Inc. v. Genetech, Inc.*,
  549 U.S. 118 (2007) .............................................................................. 14, 15

*Morris v. Mem'l Dev. Partners, LP*,
  2024 WL 811489 (D. Md. Feb. 23, 2024) .................................................. 10

*Nat'l Fire Ins. Co. of Hartford v. Morabito Consultants, Inc.*,
  2022 WL 326731 (D. Md. Feb. 3, 2022) .................................................... 12

*Nationwide Mut. Ins. Co. v. Lafarge Corp.*,
  1994 WL 706538 (D. Md. June 22, 1994) .................................................. 15

*Nautilus Ins. Co. v. 200 W. Cherry St., LLC*,
  383 F. Supp. 3d 494 (D. Md. 2019) ........................................................... 12

*Ohio Forestry Ass'n v. Sierra Club*,
  523 U.S. 726 (1998) .................................................................................... 9

*Perdue Farms, Inc. v. Travelers Cas. & Sur. Co. of Am.*,
  448 F.3d 252 (4th Cir. 2006) ..................................................................... 12

*Reno v. Cath. Soc. Servs. Inc.*,
  509 U.S. 43 (1993) ...................................................................................... 8

*Schappelle v. Roman Catholic Archdiocese of Washington*,
  No. C-15-CV-23-003696 (Md. Cir. Ct., Montgomery Cnty. Apr. 1, 2024) ............... 4

*Shahidullah v. Shankar*,
  2022 WL 286935 (D. Md. Jan. 31, 2022) .................................................. 14

*Sharestates Invs., LLC v. WFG Nat'l Title Ins. Co.*,
  2023 WL 8436159 (D. Md. Dec. 5, 2023) .................................................. 12

*St. Paul Fire & Marine Ins. Co. v. Cont'l Ins. Co.*,
  1993 WL 165681 (D. Md. May 10, 1993) .................................................. 15

*Tate v. Am. Gen. Life Ins. Co.*,
  627 F. Supp. 3d 480 (D. Md. 2022) ........................................................... 15

*Thomas v. Union Carbide Agric. Prods. Co.*,
  473 U.S. 568 (1985) .................................................................................... 9

*Those Certain Underwriters at Lloyd's, London v. Moyer*,
  2024 WL 1346880 (D. Md. Mar. 29, 2024) ....................................... 11, 12, 13

## TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*Transamerica Premier Life Ins. Co. v. Selman & Co.*, LLC,
   401 F. Supp. 3d 576 (D. Md. 2019) ........................................... 15

*Trustgard Ins. Co. v. Collins*,
   942 F.3d 195 (4th Cir. 2019) ................................................... 9

*Union Ins. Co. v. Soleil Grp., Inc.*,
   465 F. Supp. 2d 567 (D.S.C. 2006) ......................................11, 12

*Volvo Const. Equip. N. Am., Inc. v. CLM Equip. Co., Inc.*,
   386 F.3d 581 (4th Cir. 2004) ................................................... 14

*Webcor Constr., LP v. Zurich Am. Ins. Co.*,
   2017 WL 4310763 (N.D. Cal. Sept. 28, 2017) ...................... 15

*Weiland v. Palm Beach Cnty. Sheriff's Off.*,
   792 F.3d 1313 (11th Cir. 2015) .............................................. 10

*Whiting-Turner Contracting Co. v. Liberty Mut. Ins. Co.*,
   912 F. Supp. 2d 321 (D. Md. 2012) ....................................... 14

**Statutes**

Md. Code Ann., Cts. & Jud. Proc. § 5-117 ................................. 4

**Other Authorities**

5C Wright & Miller, *Fed. Prac. & Proc.* § 1376 (3d ed. 2024 update) ...................... 12

Letter from Gregory Hilton, Clerk, Supreme Court of Maryland,
   Re: *The Church of Jesus Christ of Latter-Day Saints v. Jane Doe*,
   Misc. No. 1, September Term, 2024, SCM-MISC-0001-2024 (May 7, 2024). ...................... 5

**Rules**

Fed. R. Civ. Proc. 12(e) ........................................................... 16

## PRELIMINARY STATEMENT

The Archbishop of Baltimore ("Archdiocese" or "Debtor") filed its Chapter 11 bankruptcy petition on September 29, 2023, two days before the Maryland Child Victims Act of 2023 ("CVA") went into effect.[1]  As a result, no cases revived pursuant to the current CVA could have been or can be litigated against the Archdiocese unless and until this Court lifts the automatic stay.  There has thus been no material factual development of the underlying claims for which the Debtor has said it intends to pursue coverage.  And the same is true for the 195 entities allegedly affiliated with the Archdiocese (together with the Archdiocese, the "Plaintiffs") to whom this Court extended the automatic stay as alleged co-insureds.

Plaintiffs nonetheless prematurely initiated this adversary proceeding, alleging claims for breach of contract and declaratory relief against twenty-three separate insurers (the "Defendants"), including Federal Insurance Company, Indemnity Insurance Company of North America, Insurance Company of North America, Westchester Fire Insurance Company, Hartford Accident & Indemnity Company, Hartford Casualty Insurance Company, Hartford Fire Insurance Company, Twin City Fire Insurance Company, National Union Fire Insurance Company of Pittsburgh, PA, New Hampshire Insurance Company, and the other insurance companies identified in the signature block below (the "Moving Insurers").  Evidently recognizing that there was no basis to claim that any Defendant had breached any insurance policy, Plaintiffs amended their complaint to eliminate the breach of contract claims.  But even the Amended Complaint provides no factual information (aside from merely identifying the alleged policies themselves) to support Plaintiffs' claims for declaratory relief or to allow the Moving Insurers to formulate an answer.

---

[1] *See* Case No. 23-16969, Chapter 11 Voluntary Petition Non-Individual, ECF No. 1; *id.* Declaration of John Matera in Support of First Day Motions, ECF No. 6 (hereinafter "Matera Declaration").

Nor could they do so.  These claims are unripe and premature because the Amended Complaint is predicated on a chain of hypothetical events that have not occurred and may never occur.  Notably, there are no cognizable disputes over the Moving Insurers' alleged obligations to defend (or pay defense costs), as Plaintiffs have not identified any specific lawsuits that were filed prior to the Petition Date (when the CVA was not yet in effect), and there is no indication that any such actions will be filed in light of the automatic stay.  It is also premature to try to resolve questions regarding the parties' rights and obligations with respect to any indemnity obligation because Plaintiffs are not yet legally liable for any underlying claim.

It is precisely because there is no present, cognizable dispute that the Amended Complaint cannot allege facts sufficient to sustain claims for declaratory relief.  Indeed, because the Amended Complaint fails to allege or identify the specific claims, lawsuits, judgments, or settlements allegedly at issue and for which Plaintiffs seek coverage, rendering a judicial determination of the parties' rights and duties is impossible.  Moreover, there is no concrete dispute at present given Plaintiffs failure to allege or identify:

- any specific lawsuits that have been filed against them;

- when—or even that—they tendered claims to the Moving Insurers;[2]

- whether the Moving Insurers accepted or denied coverage; or

- a single case or claim for which the Moving Insurers allegedly failed to provide coverage, let alone any settlements or judgments allegedly requiring indemnification.

---

[2] Although Plaintiffs allege in conclusory fashion that the "Archdiocese provided notice of certain claims alleging sexual abuse to certain Insurers whose policies the claims implicated," Am. Compl. ¶ 247, it does not provide any additional details, including what claims were allegedly provided to insurers, which insurers were provided notice of those claims, what policies are implicated by what claims, and whether the response from a specific insurer was deficient.

Accordingly, Plaintiffs' declaratory judgment claims are both unripe and fail to state a claim because they do not articulate any live, concrete dispute regarding the parties' respective rights and obligations.

In addition to all of the reasons described above, Plaintiffs' claims fail for an additional reason: they are not ripe for adjudication because the CVA is the subject of numerous challenges under the Maryland Constitution. If the CVA is ultimately found to be unconstitutional, there would be no claims for Plaintiffs to seek coverage for. Indeed, the entire basis for the bankruptcy filing by the Debtor would be mooted. The Court should not waste judicial resources deciding the scope of insurance coverage obligations for claims that are not only hypothetical but may never materialize at all.

A bankruptcy court in Oakland recently rejected just this sort of complaint under similar circumstances. Faced with a similarly skeletal and speculative adversary complaint from the Diocese of Oakland, the court concluded that it was deficient because it did not contain allegations regarding the circumstances that triggered indemnification obligations, the dates that claims were tendered, or facts establishing any sort of breach on the insurers' part. *See* Ex. A, Hr'g Tr., *In re Roman Catholic Bishop of Oakland*, No. 4:23-bk-40523, at 60–61 (N.D. Cal. argued Nov. 14, 2023). If anything, the case for dismissal is stronger here, where the universe of claims is unknown and the viability of all claims is subject to an ongoing constitutional challenge that may result in all, or nearly all, claims being thrown out.

Further, with respect to their claims against excess policies, Plaintiffs do not plausibly allege, as they must, that the underlying primary policies have been exhausted. In light of these facts—or more aptly put, the lack thereof—Plaintiffs fail to plausibly allege their two claims for declaratory judgment against the Moving Insurers. Accordingly, the Court should grant the

Moving Insurers' Motion to Dismiss Plaintiff's Amended Complaint as unripe and for failure to state a claim upon which relief may be granted. In the alternative, and at the very least, the Court should require the Plaintiffs to provide a more definite statement so that the Moving Insurers have enough information to frame an adequate response.

## STATEMENT OF FACTS

### *The Debtor Filed This Chapter 11 Case and Obtained a Bankruptcy Stay Before the Maryland Child Victims Act Went into Effect*

On April 11, 2023, Governor Wes Moore signed the Maryland Child Victims Act of 2023, Md. Code Ann., Cts. & Jud. Proc. § 5-117, into law. Prior to the enactment of the CVA, child sexual abuse cases against entities such as Plaintiffs were subject to a statute of repose of no more than twenty years from the date of majority, pursuant to legislation passed in 2017. But the CVA purports to do away with the statute of repose entirely for such claims, beginning on the CVA's effective date of October 1, 2023.

On September 29, 2023, the Debtor filed this Chapter 11 case. Because the Debtor's petition was filed before the purported effective date of the CVA, no such lawsuits asserting claims of sexual abuse under the CVA had been filed against the Debtor. And because the filing of the petition triggered an automatic stay pursuant to 11 U.S.C. § 362 and the Court entered a complementary § 105(a) injunction to protect the Debtor's parishes and affiliates as part of the first-day motions, no such lawsuits are proceeding against any of the Plaintiffs.[3]

It is likewise uncertain whether there will ever be valid claims asserted against the Plaintiffs because at least one Maryland court has held that the CVA is unconstitutional,[4] and a

---

[3] *See* Case No. 23-16969, ECF No. 52.
[4] Memorandum Opinion, *Schappelle v. Roman Catholic Archdiocese of Washington*, No. C-15-CV-23-003696, at *5 (Md. Cir. Ct., Montgomery Cnty. Apr. 1, 2024) (finding "that the CVA retroactively abrogated the substantive and vested rights of Defendants, and this abrogation violates the Maryland Constitution").

federal district court has certified the constitutionality question to the Supreme Court of Maryland.[5]  The Maryland Supreme Court accepted, and argument is set for September 2024.[6] Should the Supreme Court find the law is unconstitutional, Plaintiffs may not be legally obligated to pay a CVA claim.

### With No Lawsuits Pending, Plaintiffs File an Adversary Complaint

Against that backdrop, on March 28, 2024, Plaintiffs filed an adversary complaint ("Compl.").[7]  The initial Complaint asserted the same four causes of action against each of the twenty-three Defendant insurers, including Moving Insurers: Breach of Contract – Duty to Defend; Breach of Contract – Duty to Indemnify; Declaratory Judgment – Duty to Defend; and Declaratory Judgment – Duty to Indemnify.  Those causes of action, however, were posed entirely in a hypothetical sense.  Plaintiffs did not allege any specific policy provision that has been violated nor any claim that any insurer has refused to defend or indemnify (and other documents filed by the Archdiocese in this bankruptcy case, including its first-day declaration,[8] indicate that there are no underlying actions pending against the Archdiocese because the Archdiocese commenced its Chapter 11 case two days before the CVA went into effect). Instead, Plaintiffs alleged purely in the abstract that the Defendants either received notice or will receive notice of unidentified sexual abuse claims (without specifying what claims those are) and either breached or will in the future breach certain unidentified insurance policies by failing to defend or indemnify Plaintiffs against some or all of the unidentified sexual abuse claims against Plaintiffs.  Compl. ¶¶ 246–53, 261–68.  Plaintiffs then asserted, in conclusory fashion, that a

---

[5] Order, *Doe v. Church of Jesus Christ of Latter-Day Saints*, No. JKB-23-02900 (D. Md. Apr. 5, 2024).
[6] Letter from Gregory Hilton, Clerk, Supreme Court of Maryland, Re: *The Church of Jesus Christ of Latter-Day Saints v. Jane Doe*, Misc. No. 1, September Term, 2024, SCM-MISC-0001-2024 (May 7, 2024).
[7] Case No. 23-16969, ECF No. 441.
[8] *See* Matera Declaration ¶¶ 16, 20.

justiciable controversy "of sufficient immediacy and magnitude" regarding construction of the unidentified insurance policies exists "to justify the issuance of a declaratory judgment." *Id.* ¶¶ 244, 259.

### Plaintiffs File an Amended Complaint That Fails to Address the Pleading Defects in the Initial Complaint

Debtor's counsel spent 129.4 hours (and more than $87,000) to draft the initial Complaint, but it remained operative for less than four weeks because, on April 24, 2024, Plaintiffs filed an Amended Complaint ("Am. Compl.").[9]  The Amended Complaint drops Plaintiffs' breach of contract claims, apparently recognizing that such claims have no merit. Plaintiffs nevertheless maintain their claims for declaratory judgment, claiming that a justiciable controversy "of sufficient immediacy and magnitude" regarding construction of the insurance policies exists.  Am. Compl. ¶¶ 267, 274.

In the Amended Complaint, Plaintiffs allege that Defendants (i) issued insurance policies and (ii) either breached or will in the future breach those insurance policies by failing to defend or indemnify Plaintiffs against unspecified sexual abuse claims.  *Id.* ¶¶ 262–75.  But because the Amended Complaint drops any claims for "breach," the only way to read these allegations is that Plaintiffs allege that one or more Defendants "will in the future breach" their policies.  That is mere speculation and does not allege a live, ripe controversy—or any controversy at all. Although the Amended Complaint purports to identify insurance policies that allegedly provide coverage for those unspecified claims,[10] it contains no allegations regarding what claims the

---

[9] Case No. 24-00072, ECF No. 27.
[10] In many cases, the Amended Complaint is blatantly wrong or identifies policies for which no evidence of their existence has ever been provided.  The Amended Complaint, for example, cites to a policy issued by Hartford Fire Insurance Company that provides first-party *property* coverage, rather than liability coverage, as well as policies by Hartford Accident and Indemnity Company and Twin City Fire Insurance Company that contain exclusions for injury arising from abuse.  The Moving Insurers are not seeking substantive rulings on these provisions today but reserve all rights to raise these and all other issues if this Motion is denied.

alleged policies cover or how the Defendants have fallen short of their obligations under the alleged policies. And Plaintiffs do not allege that there were any judgments or settlements against them or that any judgments or settlements were tendered to the Defendants.

Nor do Plaintiffs plead when any request for defense and indemnity was allegedly tendered, let alone whether or when any specific Plaintiff tendered any request for defense or indemnity to any particular Defendant and to which entity it was sent. The Amended Complaint instead claims that, prior to the effective date of the CVA and prior to filing for bankruptcy, Plaintiffs provided "notice of certain claims alleging sexual abuse to certain Insurers whose policies the claims implicated." *Id.* ¶¶ 246–48. Plaintiffs claim that Defendants have failed to acknowledge, or will fail to acknowledge, their full coverage obligations to defend and/or indemnify the Plaintiffs, *id.* ¶ 259, because "some Insurers responded by stating that they were reserving their rights to deny or limit coverage, while other insurers did not respond to the Archdiocese's letters at all." *Id.* ¶ 260. But the Amended Complaint does not plead that the Moving Insurers, or any other Defendants, have received notice *and* have refused to provide coverage. At bottom, Plaintiffs ask the Court to award them declaratory relief, defense costs, and indemnity costs based on entirely speculative claims for things that have not happened and that may never happen. Am. Compl. ¶¶ 2, 4.

### APPLICABLE LEGAL STANDARDS

Bankruptcy Rule 7008 and 7012(b) incorporate Rules 8(a) and 12(b) of the Federal Rules of Civil Procedure and direct a bankruptcy court to dismiss an adversary proceeding when a complaint does not properly invoke this Court's subject matter jurisdiction or when the plaintiff fails to state a claim upon which relief may be granted. *In re Satellite Rests. Inc. Crabcake Factory USA*, 626 B.R. 871, 874 (Bankr. D. Md. 2021); *In re Barton-Cotton, Inc.*, 2012 WL

2803742, at *2 (Bankr. D. Md. July 10, 2012).  Here, the Moving Insurers invoke this Court's authority to dismiss this Adversary Proceeding pursuant to both Rule 12(b)(1) and Rule 12(b)(6), as well as the Court's authority, pursuant to Rule 12(e), to require Plaintiffs to supply sufficient factual information to permit the Moving Insurers to frame a response.

*Lack of Ripeness*.  Federal court jurisdiction, including this Court's jurisdiction over an adversary proceeding under Rule 7001, is limited to the adjudication of actual "cases" and "controversies."  *See Deakins v. Monaghan,* 484 U.S. 193, 199 (1988) ("Article III of the Constitution limits federal courts to the adjudication of actual, ongoing controversies between litigants."); *Bryant v. Cheney,* 924 F.2d 525, 529 (4th Cir. 1991).  If a dispute is not ripe for judicial review, then it does not meet the case or controversy requirement.[11]  *See Bryant*, 924 F.2d at 529 ("Doctrines like standing, mootness, and ripeness are simply subsets of Article III's command that the courts resolve disputes, rather than emit random advice.").  In addition to the constitutional limitations on the jurisdiction of the federal courts, the doctrine of ripeness is drawn from "prudential reasons for refusing to exercise jurisdiction."  *Reno v. Cath. Soc. Servs. Inc.,* 509 U.S. 43, 57 n.18 (1993); *see also Blanchette v. Conn. Gen. Ins. Corps.,* 419 U.S. 102, 138 (1974) (noting "to the extent that questions of ripeness involve the exercise of judicial restraint from unnecessary decision of constitutional issues, the Court must determine whether to exercise that restraint").  This doctrine exists "to prevent the courts, through premature adjudication, from entangling themselves in abstract disagreements."  *Thomas v. Union Carbide*

---

[11] Bankruptcy courts consistently enforce the same limitation that arises originally out of the Article III "case or controversy" requirement.  *See, e.g., In re Erickson*, 2013 WL 2035875, at *2 (Bankr. E.D. Mich. May 10, 2013) ("Justiciability is a concept having its basis in Article III of the United States Constitution, which requires a case or controversy, necessarily involving several related doctrines, including standing, ripeness, and the avoidance of advisory opinions."); *In re Lynn-Weaver*, 462 B.R. 310, 314 (Bankr. D. Mass. 2011) (explaining that "[t]he ripeness criterion asks whether there presently exists an actual controversy of immediate and real consequence or merely circumstances that, on the basis of events yet to occur, may or may not ripen into a real matter in contest"); *In re Davis*, 2020 WL 3485122, at *1–2 (Bankr. M.D.N.C. June 25, 2020) (dismissing adversary proceeding because issues were unripe); *In re Moseley*, 161 B.R. 382, 384 (Bankr. E.D. Tex. 1993) (same).

*Agric. Prods. Co.,* 473 U.S. 568, 580 (1985) (internal quotes omitted); *In re Energy Futures Holdings*, 531 B.R. 499, 507 (Bankr. D. Del. 2015).[12]

The doctrine of ripeness, appropriately addressed under Rule 12(b)(1), ensures that federal courts address mature controversies and are not asked to dispense abstract or random advice. *See Bryant*, 924 F.2d at 529; *Davis v. Thompson*, 367 F. Supp. 2d 792, 799 (D. Md. 2005) (Rule 12(b)(1) challenges court's authority to hear matter brought by a complaint).  To determine whether a case is ripe, this Court is required to "balance 'the fitness of the issues for judicial decision' and 'the hardship to the parties of withholding court consideration.'" *Franks v. Ross,* 313 F.3d 184, 194 (4th Cir. 2002) (quoting *Ohio Forestry Ass'n v. Sierra Club,* 523 U.S. 726, 733 (1998)).  Under that balancing test, a case is fit for federal decision when the issues that remain are "not dependent on future uncertainties," whereas the hardship prong focuses on whether the litigant will suffer undue harm in the absence of judicial resolution.  *See Charter Fed. Sav. Bank v. Off. of Thrift Supervision*, 976 F.2d 203, 208 (4th Cir. 1992); *In re Hoffer*, 383 B.R. 78, 80-81 (Bankr. S.D. Ohio 2008).  Absent an existing case or controversy, Plaintiffs' prayer for declaratory relief is a request for an advisory opinion, which this Court cannot provide.  "The declaratory judgment procedure . . . may not be made the medium for securing an advisory opinion in a controversy which has not arisen."  *Coffman v. Breeze Corps*., 323 U.S. 316, 324 (1945).

*Failure to State a Claim Upon Which Relief May be Granted*.  Under Rule 12(b)(6), a complaint should be dismissed when "the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  *In re Jaley*, 600 B.R. 511, 515 (Bankr. D. Md. 2019).

---

[12] A federal court likewise may not entertain a declaratory judgment claim in the absence of an underlying case or controversy.  *See Trustgard Ins. Co. v. Collins*, 942 F.3d 195, 199 (4th Cir. 2019) (asserting that courts must address issues of justiciability before considering the merits of a declaratory judgment action).

A complaint must contain "more than a sheer possibility that the defendant acted unlawfully," *id.* (citing *Bell Att. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)), and contain "more than bald accusations or mere speculation," *Balt. Scrap. Corp. v. Exec. Risk Specialty Ins. Co.*, 388 F. Supp. 3d 574, 583 (D. Md. 2019) (citing *Twombly*, 550 U.S. at 555). To survive a motion to dismiss, a complaint must provide more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555.

<u>Motion for More Definite Statement</u>. While a motion to dismiss concerns the legal sufficiency of a complaint, a motion for a more definite statement "focuses on whether a party has 'enough information to frame an adequate answer.'" *Malibu Media, LLC v. Doe*, 2015 WL 857408, at *2 (D. Md. Feb. 26, 2015). Courts should grant a motion brought pursuant to Rule 12(e)[13] when the complaint is "so vague or ambiguous" that the defendant cannot "frame an adequate answer" based on the information in the complaint. *Morris v. Mem'l Dev. Partners, LP*, 2024 WL 811489 (D. Md. Feb. 23, 2024).

Complaints that "assert[] multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against"—a category of pleadings known as "shotgun pleadings"—violate Rule 8(a)(2). *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1321–23 (11th Cir. 2015). To respond to a complaint adequately and in good faith, defendants need at least some details as to the allegations. 5C Wright & Miller, *Fed. Prac. & Proc.* § 1376 (3d ed. 2024 update); *In re Joe Gibson's Auto World, Inc.*, 2010 WL 5136154, at *2 (D.S.C. Aug. 3, 2010) (granting motion for a more definite statement where the allegations were not "detailed and informative enough to enable the defendant to respond").

---

[13] Bankruptcy Rule 7012(b) incorporates Rule 12(e).

## ARGUMENT

### I.    The Claims Alleged in the Amended Complaint Are Not Ripe for Adjudication

Application of the Fourth Circuit's balancing test makes clear that the claims in the Amended Complaint are not ripe for adjudication. *See Charter Fed. Sav. Bank*, 976 F.2d at 208.

*First*, Plaintiffs seek a declaratory judgment against "each of the Insurers" regarding their alleged duty to defend (Count I). However, because there are no pending lawsuits against the Debtor, there can be no dispute that the Moving Insurers have no current obligation to defend (or pay defense costs). Moreover, particularly in light of this Court's extension of the automatic stay to the Debtor's affiliates, any allegation that any Plaintiff will require a defense is entirely hypothetical. In the absence of any suit that an insurer might be required to defend (or defense costs for which reimbursement could be sought), any claim seeking a ruling on a duty to defend is not ripe and must be dismissed. *See, e.g., Union Ins. Co. v. Soleil Grp., Inc.*, 465 F. Supp. 2d 567, 575 (D.S.C. 2006); *Those Certain Underwriters at Lloyd's, London v. Moyer*, 2024 WL 1346880, at *5–6 (D. Md. Mar. 29, 2024). The scope of an insurer's obligation to pay defense costs, in other words, depends on contingencies here that may never come to pass. On the other side of the balancing test, Plaintiffs will suffer no hardship from dismissal of these claims as unripe because there are currently and may ultimately be no claims for the Moving Insurers to defend. The balance of considerations makes clear that Plaintiffs' claims are not ripe.

*Second*, Plaintiffs also claim "each of the Insurers" owes a duty to indemnify Plaintiffs (Count II). But again, it is premature to try to resolve questions regarding the parties' rights and obligations with respect to any indemnity obligation because Plaintiffs have not identified (and cannot identify) any underlying claim for which Plaintiffs are (or could be) liable. Accordingly, the scope of any duty to indemnify is necessarily abstract, hypothetical, and undetermined. Courts in this Circuit routinely hold that suits concerning the duty to indemnify "would

ordinarily be advisory when the insured's liability remains undetermined." *Trustgard Ins. Co. v. Collins*, 942 F.2d 195, 200 (4th Cir. 2019). It is also premature for this Court to consider declaratory relief on the duty to indemnify when there has not been any determination of whether there is—or ever will be—liability for the abuse claims. *See, e.g., Moyer*, 2024 WL 1346880, at *5 (abstaining from deciding indemnity coverage issues in absence of liability determination); *see also Soleil Grp.*, 465 F. Supp. 2d at 575 (granting motion to dismiss in absence of underlying lawsuit); *Sharestates Invs., LLC v. WFG Nat'l Title Ins. Co.*, 2023 WL 8436159, at *8 (D. Md. Dec. 5, 2023) ("[C]ourts applying Maryland law . . . withhold judgment on the scope of the duty to indemnify until the insured is found liable and the basis of any settlement or judgment is determined.") (quoting *Perdue Farms, Inc. v. Travelers Cas. & Sur. Co. of Am.*, 448 F.3d 252, 257–60 (4th Cir. 2006)); *Nat'l Fire Ins. Co. of Hartford v. Morabito Consultants, Inc.*, 2022 WL 326731, at *7 (D. Md. Feb. 3, 2022) ("Under Maryland law, however, the duty to indemnify depends upon liability, and is triggered only if the insured's established liability is actually covered under the policy.") (quoting *Nautilus Ins. Co. v. 200 W. Cherry St., LLC*, 383 F. Supp. 3d 494, 509 (D. Md. 2019)) (internal quotations omitted); *Allstate Ins. Co. v. Preston*, 2019 WL 3067918, at *3 (D. Md. July 12, 2019) ("Where such critical facts are undetermined, a declaratory judgment is premature, as it resolves a question that may never become ripe, based on facts that are purely hypothetical.").

And if past is prologue, it is unlikely that the issues presented in the Amended Complaint will ever need to be litigated. Some similarly situated plaintiffs have taken to filing this type of adversary proceeding as a matter of course for purely strategic reasons. Indeed, in one recent case (*In re Roman Catholic Diocese of Syracuse*), the debtor (represented by the same counsel that represents Plaintiffs here) filed an insurance adversary proceeding and had it stayed pending

mediation, only to seek to have it stayed again years later after mediation failed, suggesting that the debtor had no intention of actually litigating the insurance issues raised in its complaint. *See* Ex. B, Order Granting Debtor's Emergency Motion to Defer Consideration of Certain Motion Pending Determination of Motions to Withdraw the Reference, *In re Roman Cath. Diocese of Syracuse*, No. 21-50002 (Bankr. N.D.N.Y. Apr. 25, 2024).

Debtor's counsel has all but admitted that in this case, as in the *Diocese of Syracuse* case, the Debtor filed this action simply for tactical reasons. At the hearing held on April 15, 2024, Mr. Roth acknowledged that the plan of Debtor's coverage counsel is not to litigate this action but to stay it indefinitely, apparently on the theory that commencing an adversary proceeding, even if it is entirely premature and the Debtor has no intent to litigate, creates jurisdiction over the carriers for other purposes. *See* Ex. C, Hr'g Tr., *In re Roman Cath Archbishop of Balt.*, No. 23-16969-MMH, at 8:24–9:8 (Bankr. D. Md. argued Apr. 15, 2024).

Additionally, the uncertain legal viability of the CVA is further indication that Plaintiffs' claims are not ripe for adjudication. Federal courts have declined to entertain coverage disputes where the plaintiff cannot identify the underlying claim and the basis for arguing that an insurer has wrongfully failed to provide coverage. *See, e.g., Moyer*, 2024 WL 1346880, at *4 (dismissing coverage action as unripe where liability had not been determined). Accordingly, the Court should not waste judicial resources or estate resources on an abstract insurance coverage proceeding over disputes that are unripe at best, and which may never materialize at all.

## II.    Plaintiffs Fail to State a Claim for Declaratory Relief

Plaintiffs' declaratory claims fail to state a claim on which relief may be granted and therefore must be dismissed. Courts only rule on declaratory claims that plausibly allege "an actual case or controversy," *Geist v. Hisp. Info. & Telecomms. Network, Inc.*, 2018 WL 1169084, at *7 (D. Md. Mar. 6, 2018), and that "will serve a useful purpose in clarifying and settling the

13

legal relations in issue, and will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding," *Whiting-Turner Contracting Co. v. Liberty Mut. Ins. Co.*, 912 F. Supp. 2d 321, 337 (D. Md. 2012) (citing *Volvo Const. Equip. N. Am., Inc. v. CLM Equip. Co., Inc.*, 386 F.3d 581, 594 (4th Cir. 2004)).  To plausibly assert a claim for declaratory relief, the dispute must be "(1) definite and concrete, i.e., affecting the legal relations of parties with adverse interests; and (2) real and substantial, i.e., amenable to specific, conclusive relief, as opposed to an advisory opinion based on a hypothetical state of facts." *Evans v. Household Fin. Corp. III*, 2018 WL 1169180, at *2 (D. Md. Mar. 6, 2018) (citing *Dyer v. Md. State Bd. of Ed.*, 187 F. Supp. 3d 599, 609 (D. Md. 2016)).

Plaintiffs' claims do not come close to meeting this requirement.  Without having an actual underlying claim, lawsuit, settlement, or judgment to consider, this Court cannot make a "judicial determination of [Plaintiffs'] rights and duties and those of the Insurers with respect to an actual controversy."  Am. Compl. ¶¶ 263, 270.  Plaintiffs have not identified such a controversy, and indeed, they cannot identify such a controversy, because the Debtor filed its Chapter 11 case before the CVA went into effect and when no underlying actions were pending against Plaintiffs.[14]  *See MedImmune*, *Inc. v. Genetech, Inc*., 549 U.S. 118 (2007) (explaining that declaratory judgments must be "distinguished from an opinion advising what the law would be upon a hypothetical state of facts").  This is especially true for the breaches that Plaintiffs allege will happen in the future.  Am. Compl. ¶¶ 261, 265 (claiming Insurers "have breached *or will be in breach* of their contractual obligations" and "have refused or failed *or will refuse or*

---

[14] Ex. D, Informational Br. of the Roman Cath. Archbishop of Balt., ECF No. 5, ¶¶ 162–163, 169 ("the [Debtor] believes additional unsettled claims and liabilities remain outstanding . . . . Faced with this prospect, the [Debtor] concluded that seeking relief through Chapter 11 of the United States Bankruptcy Code"); Ex. E, Matera Declaration ¶¶ 16–17, 20 (same).  *See Butler v. Wells Fargo Bank, N.A.*, 2013 WL 145886, at *1 n.3 (D. Md. Jan. 11, 2013) (taking judicial notice of court filings in Plaintiff's bankruptcy case); *Shahidullah v. Shankar*, 2022 WL 286935, at *3 (D. Md. Jan. 31, 2022) ("On a motion to dismiss, the Court may consider official public records.") (internal quotations omitted).

*fail* to accept their legal obligations") (emphasis added).  Speculative future occurrences are a far cry from what declaratory relief is intended to address: "substantial controversy . . . of *sufficient immediacy and reality.*"  *MedImmune,* 549 U.S. at 127 (citing *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941)) (emphasis added).[15]

### III.    Plaintiffs' Claims for Excess Coverage Fail Because They Do Not Plausibly Allege Exhaustion

Plaintiffs' claims seeking coverage from excess or umbrella insurers must also be dismissed because Plaintiffs have not alleged that applicable primary insurance policies have been exhausted.  Maryland follows the "majority rule that an excess carrier's duty to defend is not triggered unless and until the underlying policies of insurance are exhausted."  *St. Paul Fire & Marine Ins. Co. v. Cont'l Ins. Co.*, 1993 WL 165681, at *5 (D. Md. May 10, 1993) (citing *Fireman's Fund Ins. Co. v. Rairigh*, 59 Md. App. 305 (1984)); *see Nationwide Mut. Ins. Co. v. Lafarge Corp.*, 1994 WL 706538, at *5 (D. Md. June 22, 1994) ("Inasmuch as the underlying primary policies have not been 'exhausted,' the U.S. umbrella and excess insurers have no duty to defend Lafarge Corporation at this stage of these proceedings.").

Plaintiffs have alleged neither exhaustion of primary policies underlying any excess policy nor facts from which exhaustion could be inferred, nor specific facts showing that the excess and umbrella coverage is or will be implicated.  *See Webcor Constr., LP v. Zurich Am. Ins. Co.*, 2017 WL 4310763, at *3–4 (N.D. Cal. Sept. 28, 2017) (finding that "plaintiffs' failure to allege facts indicating that [defendant's] duties as an excess insurer were triggered requires

---

[15] Even if Plaintiffs were referring to an anticipatory breach, that claim would fail under Maryland law.  To establish a claim for anticipatory breach, "a plaintiff must allege 'a definite, specific, positive, and unconditional repudiation of the contract by one of the parties to the contract.'" *Tate v. Am. Gen. Life Ins. Co.*, 627 F. Supp. 3d 480, 492 (D. Md. 2022) (quoting *Transamerica Premier Life Ins. Co. v. Selman & Co.*, LLC, 401 F. Supp. 3d 576, 596 (D. Md. 2019)).  Plaintiffs do not come close to meeting that requirement, as they neither allege anticipatory breach nor point to any conduct by the Moving Insurers that would constitute a repudiation.  The Court accordingly should dismiss Plaintiffs' declaratory judgment claims.

dismissal of their claim"); *Forest Labs., Inc. v. Arch Ins. Co.*, 953 N.Y.S.2d 460, 463–65 (N.Y. Sup. Ct. 2012) (dismissing insured's complaint against excess insurer where exhaustion clause required underlying insurers to pay their full policy limits).  By failing to identify settlements and judgments in their allegations, Plaintiffs impliedly admit that there has not been exhaustion of the primary policies sufficient to trigger the excess.  A conclusory statement that the excess insurers' duty to defend has attached (and many excess policies have no such duty in the first place) is insufficient to make out a claim on its own.

## IV.    In the Alternative, the Court Should Require Plaintiffs to Make a More Definite Statement of Their Complaint

Pursuant to Rule 12(e) of the Federal Rules of Civil Procedure, "[a] party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response."  Fed. R. Civ. P. 12(e). In a case involving numerous differently situated Insurer-Defendants, each with different policy terms and conditions, and nearly two hundred separate Plaintiffs, some of which may be insureds under specific Insurer-Defendants' policies and some of which are indisputably not, Plaintiffs are obligated to provide sufficient information so that each Defendant is aware of the claim or claims against it and which Plaintiffs are asserting those claims, so that each Defendant can formulate an appropriate response.

In its present form, the Amended Complaint, which states two causes of action, but does not state which Plaintiff(s) are asserting which causes of action against which Insurer(s), does not permit the Moving Insurers to determine what is being sought from them.  If their claims are sufficiently cognizable at this point to proceed, there is no reason that Plaintiffs cannot specify which of them are asserting claims against each of the Moving Insurers.  The Moving Insurers

are not required to guess in order to try to form a response to the Amended Complaint without this most basic information.

In the absence of a plain statement identifying what relief Plaintiffs are seeking from each Defendant, the Moving Insurers would be forced to proceed under the assumption that all Plaintiffs are seeking relief from every Defendant.  That includes serving broad, time-consuming, and expensive discovery on the Debtor and its 195 affiliates, who would then be forced to incur substantial expenses to respond, even though many Plaintiffs may not be seeking relief from all Defendants.  Likewise, one or more Defendants may need to prepare and prosecute dispositive motions against Plaintiffs that neither have asserted nor intended to assert claims against those Defendants.  Those resources are better spent elsewhere.  If Plaintiffs believe they have a sufficiently definite dispute to pursue at this point, they must determine what coverage they are actually seeking and should be required to amend their complaint accordingly.

## CONCLUSION

For all the foregoing reasons, the Court should grant the Moving Insurers' motion to dismiss as the claims are unripe and for failure to state a claim upon which relief may be granted. In the alternative, Plaintiffs should be required to file a further amended complaint with sufficient detail to provide the Moving Insurers with notice of the basic allegations supporting the underlying claims as required by Rule 12(e) so that the Moving Insurers have enough information to frame an adequate response.[16]

Respectfully submitted this 14th day of May 2024.

---

[16] This filing does not constitute a waiver of the Moving Insurers' right to move to withdraw the reference, to have any and all final orders in any and all non-core matters entered only after *de novo* review by a federal district court (or, as applicable, appellate court), and/or to demand their right to trial by jury in any proceeding so triable, whether or not the same be designated legal or private rights, or in any case or controversy or proceeding related thereto, and whether such jury trial is pursuant to statute or the United States Constitution.  Pursuant to this Local Rule 7012-1, the Moving Insurers hereby state that they do not consent to the entry of a final order or judgment by the Bankruptcy Court.

James P. Ruggeri (Fed. Bar No. 21926)
Joshua D. Weinberg (*pro hac vice* forthcoming)
Annette P. Rolain (*pro hac vice* forthcoming)
**RUGGERI PARKS WEINBERG LLP**
1875 K Street NW, Suite 600
Washington, DC 20006
Telephone: 202-984-1400
jruggeri@ruggerilaw.com
jweinberg@ruggerilaw.com
arolain@ruggerilaw.com

Philip D. Anker (*pro hac vice* forthcoming)
**WILMER CUTLER PICKERING HALE
AND DORR LLP**
7 World Trade Center
250 Greenwich Street
New York, NY 10007
Telephone: (212) 230-8890
philip.anker@wilmerhale.com

*Counsel to Hartford Accident and Indemnity
Company, Hartford Casualty Insurance
Company, Hartford Fire Insurance Company,
and Twin City Fire Insurance Company*

-and-

Matthew A. Hoffman (admitted *pro hac vice*)
Ryan S. Appleby (admitted *pro hac vice*)
Isabella R. Sayyah (admitted *pro hac vice*)
**GIBSON, DUNN & CRUTCHER LLP**
333 South Grand Avenue
Los Angeles, CA 90071
Telephone: 213-229-7584
mhoffman@gibsondunn.com
rappleby@gibsondunn.com
isayyah@gibsondunn.com

Michael A. Rosenthal (admitted *pro hac vice*)
**GIBSON, DUNN & CRUTCHER LLP**
200 Park Avenue
New York, NY 10166
Telephone: 212-351-3969
mrosenthal@gibsondunn.com

*/s/ David K. Roberts*
David K. Roberts (D. Md. Bar No. 18776)
**O'MELVENY & MYERS LLP**
1625 Eye Street NW
Washington, DC 20006
droberts2@omm.com

Tancred Schiavoni (admitted *pro hoc vice*)
**O'MELVENY & MYERS LLP**
Times Square Tower, 7 Times Square
New York, NY 10036
Telephone: 212-326-2000
tschiavoni@omm.com

*Counsel to Federal Insurance Company,
Indemnity Insurance Company of North
America, Insurance Company of North America,
and Westchester Fire Insurance Company*

-and-

Kevin A. Foreman (Fed. Bar. No. 21688)
**CARLTON FIELDS, P.A.**
1025 Thomas Jefferson Street, NW
Suite 400 West
Washington, DC 20007
Telephone: (202) 965-8100
kforeman@carltonfields.com

Robert W. DiUbaldo (admitted *pro hac vice*)
Nora A. Valenza-Frost (admitted *pro hac vice*)
Alex B. Silverman (admitted *pro hac vice*)
**CARLTON FIELDS, P.A.**
405 Lexington Avenue, 36th Floor
New York, New York 10174
Telephone: (212) 785-2577
rdiubaldo@carltonfields.com
nvalenza-frost@carltonfields.com
asilverman@carltonfields.com

*Counsel to National Union Fire Insurance
Company of Pittsburgh, PA, and New
Hampshire Insurance Company*

-and-

*Counsel to National Union Fire Insurance Company of Pittsburgh, PA, and New Hampshire Insurance Company*

-and-

Monique Almy (Fed. Bar No. 04479)
Miranda H. Turner (admitted *pro hac vice*)
**CROWELL & MORING LLP**
1001 Pennsylvania Avenue, N.W.
Washington, DC  20004
Telephone: (202) 624-2500
malmy@crowell.com
mturner@crowell.com

Mark D. Plevin (admitted *pro hac vice*)
**CROWELL & MORING LLP**
Three Embarcadero Center, 26th Floor
San Francisco, California 94111
Telephone: (415) 986-2800
mplevin@crowell.com

*Counsel to American Casualty Company of Reading, Pennsylvania*

Matthew Nelson (D. Md. Bar No. 19352)
Margaret F. Catalano (*pro hac vice* forthcoming)
Jillian G. Dennehy (admitted *pro hac vice*)
**KENNEDYS CMK LLP**
222 Delaware Avenue, Suite 710
Wilmington, Delaware 19801
Telephone: (302) 308-6647
matthew.nelson@kennedyslaw.com
meg.catalano@kennedyslaw.com
jillian.dennehy@kennedyslaw.com

*Counsel to United States Fire Insurance Company*

-and-

Sam J. Alberts (D. Md. Bar No. 22745)
**DENTONS US LLP**
1900 K. Street, NW
Washington, D.C. 20006
Telephone: (202) 408-7004
sam.alberts@dentons.com

Patrick C. Maxcy (admitted *pro hac vice*)
John Grossbart (admitted *pro hac vice*)
Keith Moskowitz (admitted *pro hac vice*)
**DENTONS US LLP**
233 South Wacker Drive, Suite 5900
Chicago, IL 60606-6361
Telephone: (312) 876-8000
patrick.maxcy@dentons.com
john.grossbart@dentons.com
keith.moskowitz@dentons.com

*Counsel to Travelers Casualty and Surety Company formerly known as The Aetna Casualty & Surety Company, The Travelers Indemnity Company, St. Paul Fire and Marine Insurance Company, Northfield Insurance Company, and U.S. Fidelity and Guaranty Company*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on the 14th day of May 2024, a true and correct copy of the

foregoing document was filed and served via the Court's CM/ECF e-filing system on all parties

of record:

Sam Alberts
sam.alberts@dentons.com

Monique D. Almy
malmy@crowell.com

G. Calvin Awkward, III
cawkward@goldbergsegalla.com

Adam Ross Durst
adurst@goldbergsegalla.com

Justin Philip Fasano
jfasano@mhlawyers.com

John Grossbart
john.grossbart@dentons.com

Jordan Hess
jhess@crowell.com

Catherine Keller Hopkin
chopkin@yvslaw.com

Patrick C. Maxcy
patrick.maxcy@dentons.com

M. Keith Moskowitz
keith.moskowitz@dentons.com

Mark D. Plevin
mplevin@crowell.com

Jonathan Schapp, I
jschapp@goldbergsegalla.com

Miranda H. Turner
mturner@crowell.com

*/s/ David K. Roberts*
David K. Roberts

20